**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MELISSA ANDRZEJEWSKI,

*Petitioner,*

v.

FEDERAL AVIATION ADMINISTRATION,

*Respondent.*

No. 06-75730

FAA No.
EA-5263

ORDER AND
AMENDED
OPINION

On Petition for Review of an Order of the
Federal Aviation Administration

Submitted September 12, 2008*
San Francisco, California

Filed December 3, 2008
Amended April 10, 2009

Before: Diarmuid F. O'Scannlain, Ronald M. Gould and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea

*The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a) (2).

## COUNSEL

Kathleen A. Yodice, Law Offices of Yodice Associates, Washington, D.C., for the petitioner.

James A. Barry, Senior Attorney, Office of the Chief Counsel, Federal Aviation Administration, Washington, D.C., for the Respondent.

## ORDER

The opinion filed December 3, 2008, slip op. at 15885, is hereby amended as follows:

slip op. at 15890,

line 32    Replace <The ALJ simply gave more weight to Andrzejewski's witnesses than to those of the FAA because of Andrzejewski's witnesses' greater experience and familiarity with the flight characteristics of an Edge aircraft. This is precisely what triers-of-fact should do when confronted with expert witnesses whose testimony conflicts on such basic issues as whether the pilot operated the particular plane in an "aerobatic flight" or in a "careless or reckless" manner. After all, what may look like derring-do to a Sunday driver may be a routine cut to a NASCAR driver. The weight of evidence, measured by the witness' knowledge, experience, and other qualifications, is every bit as much a component of "credibility" as whether the witness has contradicted himself or given the trier-of-fact other reasons to find him not credible.> with <The ALJ simply gave more weight to the account of Andrzejewski's flight as set forth by one side's witnesses rather

than the other. This is precisely what triers-of-fact should and must do when confronted with testimony that conflicts on such basic issues as flight path and altitude. *See Dutton*, 7 N.T.S.B. at 521-22; *see also Gould*, No. EA-5085, 2004 WL 595290 (N.T.S.B. Mar. 18, 2004); *Oliveira*, No. EA-4995, 2002 WL 31094174 (N.T.S.B. Sept. 17, 2002).>

With this amendment, the panel votes unanimously to deny the petition for rehearing. Fed. R. App. P. 40. No further petitions will be entertained.

## OPINION

BEA, Circuit Judge:

Melissa Andrzejewski, a 22-year-old pilot, petitions for review of an order by the National Transportation Safety Board ("NTSB") reversing the decision of an Administrative Law Judge ("ALJ"). After a hearing, the ALJ had found in Andrzejewski's favor and had reversed a Federal Aviation Administration ("FAA") Emergency Order of Revocation ("Revocation Order"), handed down without a hearing, which revoked Andrzejewski's commercial pilot's license on the ground that Andrzejewski performed aerobatic maneuvers too close to the ground—indeed during takeoff—in violation of 14 C.F.R. § 91.303(e).[1]

We have jurisdiction pursuant to 49 U.S.C. § 46110 and 5

---

[1] 14 C.F.R. § 91.303(e) provides that "[n]o person may operate an aircraft in an aerobatic flight . . . [b]elow an altitude of 1,500 feet above the surface."

U.S.C. § 706. We grant Andrzejewski's petition and remand to the NTSB.

**Background**

Andrzejewski started flying in 2002 when she was 18 years old. She has logged more than 1500 hours of flight time, most during aerobatic flights in air shows and competitions.

On May 22, 2006, Andrzejewski showed her new high-performance, single-seat Zivco Edge 540 aircraft to her family at the Butler County Airport in Butler, Pennsylvania. Andrew Pierce, an aviation safety inspector for the Allegheny Flight Standards Office, and Christopher Hayden, the chief pilot for AirQuest Aviation, were at the Butler County Airport that day and witnessed Andrzejewski's flight. Neither Pierce nor Hayden had experience with Edge aircraft.

Both Pierce and Hayden observed Andrzejewski's plane departing the airport at a steep angle. They saw the plane do a "wing wag."[2] Then, the plane banked steeply before making a fast descent over the runway. After another wing wag, the plane climbed at a very high pitch before departing. Based solely on statements Pierce and Hayden submitted to the FAA, but without any explanation from Andrzejewski, the FAA Administrator concluded Andrzejewski had performed aerobatic maneuvers during takeoff in violation of 14 C.F.R. § 91.303(e). The FAA Administrator issued an Emergency Order of Revocation of Andrzejewski's commercial pilot's license on September 28, 2006.

Andrzejewski timely appealed the Revocation Order to the NTSB. At a hearing before an ALJ, the FAA presented the testimony of Hayden and Pierce. It also presented expert testi-

---

[2]A wing wag is a maneuver in which a pilot tilts a wing of the plane down on one side, and then on the other side, in quick succession.

mony concluding that Andrzejewski's maneuvers were contrary to the normal operation of the Edge aircraft.

Andrzejewski presented ten witnesses, including herself. Andrzejewski contended that nothing about her flight was aerobatic. After takeoff, she executed a "clearing turn," a quick right turn followed by a left turn, which was the normal method for the pilot of an Edge aircraft to see obstacles directly in front of the plane during takeoff. She explained that, due to the steep pitch at which the Edge takes off, the area directly in front of the nose of the plane is difficult to see. Andrzejewski planned to touch down on the runway before taking off again, but she abandoned the maneuver due to a tailwind.

Andrzejewski's eyewitnesses testified that they saw nothing abnormal about her flight. Her three expert witnesses testified that Andrzejewski's flight was within the normal operating procedures for the Edge aircraft, which procedures include steep takeoffs, high speeds, and clearing turns. Robert Holland, an aerobatic pilot and flight instructor, specifically noted that a witness unfamiliar with the Edge might think that Andrzejewski's flight was abnormal, while in fact, for an Edge, the flight was actually "very normal."

The ALJ concluded Andrzejewski did not violate FAA regulations during her flight. In his oral decision, the ALJ noted Andrzejewski's witnesses testified that there was nothing aerobatic about the flight. In considering the FAA's witnesses, the ALJ concluded, "I'm not saying that the [FAA's] witnesses didn't see what they say, but perhaps they misunderstood what they saw."

The FAA timely appealed the ALJ's decision to the NTSB. In a written order, the NTSB reversed the ALJ. The NTSB concluded that the ALJ had not made credibility determinations to which the NTSB owed deference. Instead, the NTSB conducted a *de novo* review of the evidence. The NTSB found

the FAA's witnesses more credible than Andrzejewski's and held Andrzejewski violated 14 C.F.R. § 91.303(e) by flying aerobatically and 14 C.F.R. § 91.13(a)[3] by flying in a careless or reckless manner. Accordingly, the NTSB reversed the ALJ's decision and reinstated the Revocation Order.

Andrzejewski timely filed a petition for review with this court.

## Standard of Review

Our review of a decision by the NTSB is governed by the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). *Janka v. Dep't of Transp.*, 925 F.2d 1147, 1149 (9th Cir. 1991). Accordingly, we will set aside the NTSB's decision if we find it to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency's decision is arbitrary and capricious if the agency fails to follow its own precedent or fails to give a sufficient explanation for failing to do so. *See Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Bd. of Trade*, 412 U.S. 800, 807-08 (1973).

## Analysis

[1] Where an ALJ chooses to credit one set of witnesses' version of events over another, he has made an implicit credibility determination to which the NTSB must defer "in the absence of any arbitrariness, capriciousness or other compelling reasons." *Dutton*, 7 N.T.S.B. 521, 523 (1990). The NTSB must leave undisturbed an ALJ's credibility finding "unless there is a compelling reason or the finding was clearly erroneous." *Chirino v. NTSB*, 849 F.2d 1525, 1529-30 (D.C. Cir. 1988).

---

[3]14 C.F.R. § 91.13(a) provides that "[n]o person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another."

**[2]** Here, the ALJ made an implicit credibility finding when he determined that Andrzejewski's witnesses gave a more accurate version of events than the version given by the FAA's witnesses. While the ALJ admitted he was not denying the FAA's witnesses saw what they said they saw, the ALJ noted the FAA's witnesses did not have experience with the Edge aircraft and its flight characteristics—compared with Andrzejewski's witnesses—and they may have misunderstood the flight maneuvers they witnessed.

**[3]** The ALJ simply gave more weight to the account of Andrzejewski's flight as set forth by one side's witnesses rather than the other. This is precisely what triers-of-fact should and must do when confronted with testimony that conflicts on such basic issues as flight path and altitude. *See Dutton*, 7 N.T.S.B. at 521-22; *see also Gould*, No. EA-5085, 2004 WL 595290 (N.T.S.B. Mar. 18, 2004); *Oliveira*, No. EA-4995, 2002 WL 31094174 (N.T.S.B. Sept. 17, 2002). Therefore, in this case, the NTSB erroneously concluded the ALJ did not make a credibility determination to which the NTSB was required to defer.

**[4]** The NTSB's failure to give the ALJ's implicit credibility determination the requisite level of deference was contrary to NTSB precedent and, therefore, arbitrary and capricious.[4] *See Atchison*, 412 U.S. at 807-08. Because the NTSB incor-

---

[4]There is some language in the NTSB's opinion that could be construed as an "explanation" for failing to adhere to its own precedent. *See Atchison*, 412 U.S. at 807-08. Such "explanations" are themselves in conflict with NTSB precedent. First, the NTSB's assertion that the ALJ "abandoned any detailed assessment of the evidence in the case as it relates to his findings" does not justify *de novo* review. *Andrzejewski*, No. EA-5263, 2006 WL 3568702, at *4 (N.T.S.B. Dec. 4, 2006). An ALJ's "credibility findings as to the witnesses are implicit" even where detailed assessment is lacking. *Air E. Mgmt., Ltd.*, No. EA-5089, 2004 WL 999217, at *2 (N.T.S.B. May 6, 2004). Likewise, the fact the ALJ found some of the FAA's witnesses' testimony helpful does not mean he must credit their testimony completely. *Andrzejewski*, 2006 WL 3568702, at *5; *see Dutton*, 7 N.T.S.B. at 522-23 (stating that "a credibility determination does

rectly concluded the ALJ's decision was not based on an implicit credibility determination, however, the NTSB has not yet addressed whether there is a "compelling reason" to reverse the ALJ's credibility finding or whether the finding was "clearly erroneous." *See Chirino*, 849 F.2d at 1529-30. Thus, we remand to the NTSB to make these determinations in the first instance. *See INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (holding that where an agency has not yet considered an issue, the " 'proper course' " is to remand the matter to allow the agency to consider the issue in the first instance) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 726, 744 (1985)).

**[5]** Accordingly, we grant Andrzejewski's petition and remand to the NTSB for reconsideration.

**PETITION GRANTED.**

---

not require [an ALJ] to disbelieve the entire testimony of opposing witnesses," because "[e]ven if the [ALJ] found portions of [one party's witnesses'] testimony believable, it is not inconsistent for her to have credited the testimony of the [other party's] witnesses as the more accurate account of what occurred").