21 F.3d 1116
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Ray FLOYD, Defendant-Appellant.
 No. 92-10481.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 17, 1994.*
Decided March 21, 1994.
 
 Before: POOLE, CANBY AND RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Robert Ray Floyd was prosecuted for his role as the chief of the ground crew in a drug ring that employed small aircraft to smuggle marijuana from Mexico into southern Arizona. A jury convicted Floyd of conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. Sec. 846, and possession with intent to distribute marijuana in violation of 21 U.S.C. Sec. 841(a)(1). In his pro se appeal, Floyd alleges that the district court committed numerous errors before and during trial. We affirm.
 
 ANALYSIS
 
 3
 Floyd's assertions of error begin even before the grand jury proceeding. He alleges that he was prejudiced by the government's delay in indicting him. He further argues that the government misconstrued the evidence at the grand jury phase in order to obtain an indictment. The district court denied Floyd's motions to dismiss the indictment. Floyd also alleges that the district court erred in refusing to suppress evidence obtained during an investigatory stop long before he was arrested. He alleges that he was denied an opportunity to perform scientific analysis of the physical evidence used against him and that the government failed to disclose information necessary to impeach prosecution witnesses.
 
 
 4
 Floyd alleges additional errors at the trial stage. He contends that the court incorrectly allowed the government to constructively amend the indictment and that the court erred in seating a juror in a manner outside the normal procedure. He asserts that the court erred in admitting certain evidence, and that, in any event, the evidence was insufficient to sustain his conviction. Finally, he argues that government misconduct requires reversal of his conviction. We examine each issue in turn.
 
 
 5
 I. Dismissal for grand jury abuse.
 
 
 6
 A government agent misleadingly implied to the grand jury that he had personally observed Floyd at the scene of the crime. The agent's knowledge was actually derived from the statement of one of Floyd's codefendants. The government concedes that the statement was erroneous but contends the error was unintentional and, in any case, insignificant considering the totality of the testimony presented. Floyd contends that the erroneous remarks testimony entitled him to dismissal of the indictment.
 
 
 7
 We review de novo the district court's failure to dismiss Floyd's motion for dismissal for prosecutorial misconduct before the grand jury. United States v. Spillone, 879 F.2d 514, 520 (9th Cir.1989). We will dismiss an indictment for prosecutorial misconduct before the grand jury only if the violation substantially influenced the grand jury's decision to indict or if there is great doubt that the decision to indict was free from substantial influence of such misconduct. Id. at 521. Given all of the evidence presented to the grand jury, the erroneous statement alone could not have substantially influenced the grand jury's decision. Furthermore, the agent's testimony had the hallmarks of inadvertence, not fraud. We have difficulty characterizing the misleading remarks as prosecutorial misconduct.
 
 
 8
 The agent testified accurately at trial. The petit jury's subsequent guilty verdict on the charges against Floyd cured any error that may have arisen in the indictment stage during the grand jury hearing. See United States v. Mechanik, 475 U.S. 66, 72-73 (1985).
 
 
 9
 II. Dismissal for pre-indictment delay.
 
 
 10
 We review claims of due process violations caused by pre-indictment delay under the abuse of discretion standard. United States v. Gonzalez-Sandoval, 894 F.2d 1043, 1050 (9th Cir.1990). To rise to a denial of due process, Floyd must prove that the pre-indictment delay caused him actual prejudice. See id. If actual prejudice is established, we will weigh the reason for the delay against its length to determine whether Floyd was denied due process. Id.
 
 
 11
 Floyd alleges that the three-year delay between the charged conduct and the indictment caused him actual prejudice because it prevented him from locating a witness who could have served as an alibi for his defense. Because Floyd's original motion in district court regarding pre-indictment delay failed to mention this missing witness, we are skeptical of her existence. Moreover, Floyd presented no evidence that he searched for the witness.
 
 
 12
 In the absence of any evidence, or indeed allegation, that Floyd searched for such a witness, Floyd's contention that "if [he] had been indicted within a year or so of the crime charged against him, he stood a good chance of locating [his alibi witness]" is too speculative to meet the heavy burden of actual prejudice. Furthermore, if Floyd was actually prejudiced by the alleged loss of this witness, we are certain that he would have brought this issue to the attention of the district court.
 
 
 13
 III. Suppression of evidence for the allegedly illegal stop.
 
 
 14
 Whether law enforcement officers had a reasonable suspicion to justify an investigatory stop of Floyd is a mixed question of law and fact that we review de novo. United State v. Hernandez-Alvarado, 891 F.2d 1414, 1416 (9th Cir.1989). An officer may make such a stop if he is aware of specific, articulable facts that, taken with objective and reasonable inferences, form a basis for suspecting that the particular person detained is engaged in criminal activity. Id.
 
 
 15
 At approximately 3:00 a.m. following the day that several of Floyd's codefendants were apprehended while importing marijuana, Floyd was stopped and questioned in his vehicle as he was leaving the home of one of the (jailed) coconspirators. Floyd alleges that the stop was illegal.
 
 
 16
 The agent's brief investigatory stop of Floyd, in the middle of the night, as he was departing the home of a man caught red-handed and arrested just hours earlier for smuggling marijuana, was justified by reasonable suspicion. The agents knew that other suspects involved in the smuggling operation were at large and it was objectively reasonable to suspect that a person departing the possible center of criminal operations in the middle of the night was engaged in criminal activity.
 
 
 17
 IV. Floyd's motion to conduct scientific analysis of evidence.
 
 
 18
 Floyd asserts that he was entitled to have an independent chemical analysis performed on a sample of the controlled substance that was used in evidence against him. This the government does not dispute. The government contends that Floyd never made such a request. Indeed, the record fails to reveal one. Because Floyd failed to provide any evidence of such a request, we reject his argument.
 
 
 19
 V. Floyd's claim that the government withheld impeachment
 
 
 20
 evidence from the defense.
 
 
 21
 Floyd claims that the district court erred in denying a motion by defense counsel to force the government to disclose "rap sheets" on each of the government's witnesses. The district court refused to rule on the motion because it was untimely filed.
 
 
 22
 It is rudimentary that a right may be forfeited if a defendant fails to assert that right in a timely manner. United States v. Olano, 113 S.Ct. 1770, 1776 (1993). The government asserts that the requested information was provided to Floyd. Furthermore, Floyd presented no evidence of attempting to obtain the information. Because Floyd fails to convince us that the district court's rejection for untimeliness was abusive, we decline to rule that the district court erred in rejecting the motion.
 
 
 23
 VI. Constructive amendment of the indictment.
 
 
 24
 Floyd argues that the government constructively amended the indictment to include an aiding and abetting charge. In support of this allegation, he notes that the grand jury specifically returned charges of aiding and abetting against two of his coconspirators but failed to charge Floyd with aiding and abetting.
 
 
 25
 Though the indictment failed explicitly to charge Floyd with aiding and abetting, every federal indictment is deemed to contain an aiding and abetting charge. See United States v. Michaels, 796 F.2d 1112, 1118 (9th Cir.1986). Therefore, we reject Floyd's argument that the indictment was constructively amended.
 
 
 26
 VII. The validity of the jury selection procedure.
 
 
 27
 After the jury had been selected and sworn, one of the jurors declared that she was sick. The court excused the juror and selected another member of the venire. This person apparently was not an alternate and neither side was given the opportunity to exercise peremptory strikes against the new juror. Floyd alleges that the district court erred in selecting the jury.
 
 
 28
 Under Federal Rule of Criminal Procedure 24(c), the district court may choose alternate jurors to replace jurors who are unable to perform their duties. The rule provides that they shall be drawn in the same manner, they shall have the same qualifications, they shall be subject to the same examination and challenges, and they shall take the same oath and shall have the same functions, powers, facilities and privileges as the regular jurors.
 
 
 29
 However, although Floyd objected to the manner in which the juror was selected, he failed to request voir dire examination of the new juror or ask for additional peremptory strikes. Floyd does not argue that the chosen juror was biased or in any way unqualified. Under these circumstances, we fail to see how Floyd was prejudiced by the irregular jury selection procedure. Consequently, although the district court erred in departing from the strictures of Fed.R.Crim.P. 24(c), the error was harmless.
 
 
 30
 VIII. Allegedly erroneous admission of Rule 404(b) evidence.
 
 
 31
 Floyd objects to the admission of evidence that he had assisted in parachute smuggling in Mexico and that he had previously cultivated marijuana on his farm. Federal Rule of Evidence 404(b) generally prohibits evidence of other crimes or wrongful acts to prove the character of a person. Furthermore, it prohibits the admission of evidence of past crimes or wrongful acts for any purpose unless there is reasonable notice to defense counsel in advance of trial or good cause shown for the failure to give pretrial notice.
 
 
 32
 The evidence of parachute smuggling in Mexico was not excludible under Rule 404(b) because the rule does not operate against the defense. The parachute smuggling evidence was not offered by the government; it was introduced during cross-examination of a government witness by defense counsel. The defense is entitled to introduce such evidence.
 
 
 33
 The evidence that Floyd had previously cultivated marijuana likewise was not inadmissible under Rule 404(b). The testimony was not offered by the prosecution until defense counsel indicated in his opening statement that he would introduce testimony that the government knew to be false. The substance of the testimony was that Floyd's ranch provided him a legal source of income. The government argued that Floyd's only apparent source of income at the ranch was marijuana cultivation.
 
 
 34
 Although the government stipulated that it would not present evidence of past marijuana cultivation, defense counsel's attempt to establish that Floyd had numerous legal sources of income on his ranch was an attempt to mislead the jury on a matter in which the government's hands were tied by a good faith stipulation. We will not countenance attempts to mislead the jury in usch a manner. The defense counsel "opened the door" to the evidence of past marijuana cultivation during opening statement by attempting to establish a misleading alibi. Thus, the evidence was admitted for a proper purpose.
 
 
 35
 Having established that the evidence was introduced for a proper purpose, we must next determine whether the evidence is nevertheless inadmissable because of the government's failure to provide pretrial notice to defense. We note that defense was aware that the government had this evidence. Otherwise, there would have been no stipulation. The government was unable to provide reasonable notice in advance of trial that it would offer the impeachment testimony because the government was not on notice that the defense would attempt to establish the misleading factual scenario. See, e.g., United States v. Beltran-Rios, 878 F.2d 1208, 1212 (9th Cir.1989) (the government may introduce evidence otherwise excludable when the defendant "opens the door" by introducing potentially misleading testimony). The district court did not err in admitting the Rule 404(b) evidence.
 
 
 36
 IX. Admissibility of the allegedly fabricated truck repair order.
 
 
 37
 Floyd alleges that a pickup truck repair order that linked him with the conspiracy was fabricated by the government and that the district court colluded with the government in preventing Floyd from obtaining a copy of it. Floyd's bald assertions are contrary to the facts in the record and, thus, his argument fails.
 
 
 38
 X. Alleged jury instruction error regarding overt act
 
 
 39
 requirement on conspiracy count.
 
 
 40
 The district court failed to instruct the jury on the overt act element of a conspiracy charge. The district court's failure is harmless if it is clear from the jury's verdict on other charges that the jury necessarily found an overt act was committed in furtherance of the conspiracy. See Hart v. Stagner, 935 F.2d 1007, 1012-13 (9th Cir.1991). Floyd cannot possibly have been prejudiced by this omission because the jury also convicted him of possession with intent to distribute marijuana, a crime that was integral to the conspiracy. Furthermore, ample evidence established that Floyd was the leader of the ground crew in the conspiracy. In view of the overwhelming evidence and the jury's conviction on the possession charge, Floyd was not prejudiced by the omission of a specific instruction on the overt act requirement.
 
 
 41
 XI. Alleged jury instruction error regarding the
 
 
 42
 definition of possession.
 
 
 43
 Floyd contends that the district court erred by failing to instruct the jury that the definition of possession included "dominion and control" over the marijuana involved in this specific smuggling event. He alleges that the court's instructions were so vague that the jury could obey the instruction and convict him for possession of marijuana that he had admitted growing in the past.
 
 
 44
 If a defendant fails to request an instruction below, we may reverse only if the omission amounted to plain error, that is, highly prejudicial error affecting substantial rights. United States v. Garza-Juarez, 992 F.2d 896, 910 (9th Cir.1993). In Garza-Juarez, we ruled that the district court's failure to instruct the jury on the definition of possession was not plain error because it was a word of common usage.
 
 
 45
 Floyd failed to object below to the court's instruction on possession. Though the instructions apparently are not to Floyd's liking, they properly instructed the jury on the elements of a possession charge. Accordingly, the district court did not err in failing to give the "dominion and control" instructions that Floyd did not proffer.
 
 
 46
 XII. The district court's failure to give the jury a
 
 
 47
 limiting instruction regarding the admission of
 
 
 48
 Rule 404(b) evidence.
 
 
 49
 Floyd alleges that the district court erred in failing to give the jury a limiting instruction related to evidence of prior bad acts. Here, too, Floyd failed to request such an instruction. As noted above, the evidence was properly admitted under Rule 404(b). Although limiting instructions regarding evidence of prior bad acts increase our confidence that juries have properly interpreted the evidence, the district court's failure to provide such instructions does not amount to plain error.
 
 
 50
 XIII. Alleged improper "aiding and abetting" instruction.
 
 
 51
 As we noted above, the federal indictment constructively contained an "aiding and abetting" charge whether or not the words were explicit. See United States v. Michaels, 796 F.2d 1112, 1118 (9th Cir.1986). Because the evidence was sufficient that a rational jury could have found that Floyd "aided and abetted" the crime of possession with intent to distribute marijuana, the government was entitled to such an instruction. Consequently, Floyd's objection fails.
 
 
 52
 XIV. Sufficiency of the evidence.
 
 
 53
 In examining whether the evidence is sufficient to support a conviction, we will review the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. To prove that a conspiracy exists, the government must prove: first, an agreement to commit an illegal act; second, an overt act in furtherance of the illegal objective; and third, the requisite intent to commit the underlying offense. United States v. Martin, 4 F.3d 757, 759 (9th Cir.1993).
 
 
 54
 Floyd's chief contention is that the prosecution failed to introduce sufficient evidence because it relied primarily on the testimony of one of the coconspirators, Steve Cox, and that Cox's allegation that Floyd was present at the airport shortly before the others were apprehended, was uncorroborated. This objection holds little water because even the uncorroborated testimony of an accomplice is sufficient to sustain a conviction unless the testimony is incredible or insubstantial on its face. United States v. Lopez, 803 F.2d 969, 973 (9th Cir.1986). Cox's testimony is both facially credible and substantial.
 
 
 55
 Furthermore, there is sufficient independent evidence to prove the elements of a conspiracy. At least two coconspirators testified that Floyd was a member of the ground crew of the smuggling operation. They also testified that Floyd was the leader of the ground crew and that he held meetings to brief the other members on the operation. This testimony is sufficient to establish an agreement in furtherance of an illegal purpose, overt acts in furtherance of the agreement and purpose, and the intent to commit the underlying offense. The fact that Cox is the only one who testified that Floyd was present at the airport on the day the operation was interdicted is irrelevant.
 
 
 56
 Floyd also claims that the evidence is insufficent to prove possession. On the contrary, there was ample evidence embodied in coconspirator Prettyman's testimony that Floyd possessed marijuana at his ranch.
 
 
 57
 XV. Alleged prosecutorial misconduct.
 
 
 58
 Finally, Floyd asserts numerous bases of prosecutorial misconduct. Floyd's allegations, however, merely summarize the previous arguments and assert that the government is responsible for each of the errors. Errors in the district court do not necessarily indicate prosecutorial misconduct. At any rate, because each of Floyd's substantive arguments are specious, and the charge of prosecutorial misconduct need not be addressed.
 
 CONCLUSION
 Floyd's convictions are
 
 59
 AFFIRMED[1].
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Floyd's motion to correct the trial record or to remand for that purpose is denied